UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BURNS,

     Plaintiff,               Civil Action No.: 18-10937
                              Honorable Terrence G. Berg
v                             Magistrate Judge Elizabeth A. Stafford

SHAWN BREWER, *et al*.

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, [ECF NO. 26], AND DISMISS SOME DEFENDANTS *SUA SPONTE*

Plaintiff William Burns, a prisoner acting *pro se*, sues Michigan Department of Corrections (MDOC) employees under 42 U.S.C. § 1983 after he was prohibited from receiving by mail proofs of books he wrote because they allegedly posed a security threat.  [ECF No. 1].  Defendants Michelle Floyd, Jennifer Norder, James King, Christine McCumber-Hemry, Kimberly Napier, Shawn Brewer and Greg Wilton (collectively, "defendants") move for summary judgment.  [ECF No. 26].  Burns filed a response, but then moved to amend his response, which was granted. [*See* amended response at ECF No. 35].  Defendants filed no reply.   Two remaining defendants, Fredeane Artis and Brent Rohrig, have filed a

separate motion for summary judgment to which Burns has yet to respond. [ECF No. 44]. The Court **RECOMMENDS** that defendants' motion be **GRANTED IN PART AND DENIED IN PART,** and that claims against some defendants, including Artis and Rohrig, be dismissed *sua sponte*. If this recommendation is adopted, a claim under the First Amendment against Napier and King will remain.

## I.    BACKGROUND

In April 2016, while Burns was housed at the G. Robert Cotton Correctional Facility, Create Space publisher mailed him proofs of four books that he authored—"Some Kind of Crook," "The Wee Hours," "Peaches, The Wee Hours" and "Florida Snow." [ECF No. 1, PageID.3-7; ECF No. 1-1, PageID.24; ECF No. 1-2, PageID.68; ECF No. 1-3, PageID.100]. Burns alleges that Norder signed for the books upon arrival at JCF and then forwarded them to the mail room. [*Id.*, PageID.4]. Burns mainly blames Napier, an administrative assistant, for the initial rejection of his books. In an affidavit, Burns wrote that Wilton, who he describes as the property officer, reported that Napier removed the books from the mail room. [*Id.*, PageID.5; ECF No. 1-3, PageID.81]. Burns also says that King told him that Napier took his books to King's office. [*Id.*]. And Burns's wife

2

wrote him to say that Napier had taken the books.  [ECF No. 1-3, PageID.100].

In a memorandum, Napier denied preparing or distributing the mail rejection.  [ECF No. 1-1, PageID.24].  But after King, a prison counselor, was appointed as the hearing officer to address Burns's grievances, King wrote that Norder said that she had received the books from "Napier with instructions to generate a Notice of Rejection."  [ECF No. 1-2, PageID.35]. King held that the rejection of the books was proper under MDOC Policy Directive (PD) 05.03.118, saying that because Burns was the author of the books, he could use them to influence or pressure other prisoners to purchase or distribute them.  [*Id.*].

King also asserted that Burns intended to sell his books through online retailers after he proofed and edited them, and that the same policy prohibited mail intended for operating a business enterprise. [ECF No. 1-2, PageID.35].  But defendants do not cite the potential that Burns might sell the books online and thus operate a business operation as a justification for rejecting the books in their motion for summary judgment.  They cite only the alleged risk that he could use the books to exert influence or pressure to have other prisoners purchase or distribute the books, which would

allegedly threaten the good order of the facility.  [ECF No. 26, PageID.227-34].

## II.   ANALYSIS

### A.

Rule 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify portions of the record that show the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The Prison Litigation Reform Act (PLRA), requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Requiring exhaustion allows prison officials an opportunity to resolve disputes about the exercise of their responsibilities before being haled into court and produces a useful

administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007). A prisoner's grievance must give "prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation and internal quotation marks omitted).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim," but it is self-evident that an untimely or otherwise improperly filed grievance does not fulfill the exhaustion requirement.  *Jones*, 549 U.S. at 218; *see also Woodford,* 548 U.S. at 97.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015)).

A "summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion

generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence." *Anderson v. Jutzy,* No. 15-11727, 2016 WL 1211747, at *3 (E.D. Mich. Mar. 29, 2016).  But granting summary judgment for failure to exhaust administrative remedies is not on the merits and requires dismissal without prejudice.  *Adams v. Smith*, 166 Fed. Appx. 201, 204 (6th Cir. 2006)

Other arguments defendants make that attack the sufficiency of the complaint are more properly categorized as being dismissal for under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief."  *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

6

Although defendants did not properly identify some arguments as being for dismissal under Rule 12(b)(6), the PLRA requires the Court to *sua sponte* dismiss a claim filed by a *pro se* prisoner proceeding in *forma pauperis* if the claim (1) is frivolous; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from that relief.  28 U.S.C. § 1915(e)(2)(B); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

**B.**

### 1.  The MDOC Grievance Process

MDOC PD 03.02.130 (effective July 9, 2007) has a three-step procedure that prisoners must follow to complete the administrative review process and properly exhaust grievances.  A prisoner must attempt to resolve informally the problem with the allegedly offending staff, and then may file a Step I grievance about any unresolved issues with a grievance coordinator.  PD 03.02.130, ¶ P and R.  The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due.  *Id.* at ¶ BB.  The same schedule applies to a Step III appeal—it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the

7

response was due.  *Id.* at ¶ FF.  Prisoners must appeal their grievances

through Step III and wait until receipt of a Step III response, or until the

response is past due, before filing suit.

The grievance policy states that grievances must include "dates,

times, places, and names of all those involved in the issue being grieved."

*Id.* at ¶ R; *see also Robinson v. Gidley*, No. 1:07-CV-668, 2008 WL

623822, at *4 (W.D. Mich. Mar. 3, 2008) ("The version of the MDOC

Grievance Policy in effect at the time relevant to this action requires [that]

the '[d]ates, times, places and names of all those involved in the issue

being grieved are to be included' in the grievance.").[1]  But courts have

recognized a limited exception to the requirement that a prisoner name

each officer about whom he grieves; "[a]n inmate need not identify each

officer by name when the identities of the particular officers are unknown."

*Watson v. Jamsen*, No. 16-13770, 2017 WL 9477709, at *3 (E.D. Mich.

Aug. 11, 2017), *adopted*, No. 16-CV-13770, 2017 WL 4250477 (E.D. Mich.

Sept. 26, 2017) (internal citation and quotation marks omitted).  Still, the

"inmate must still describe the person or persons against whom he has a

---

[1] Burns cites *Jones v. Bock* as stating that it is unnecessary to name
particular officials in a grievance to exhaust claims against them.  549 U.S.
at 218.  But MDOC updated its regulations to include such a requirement
after *Jones.*

complaint with sufficient information to alert the prison officials to the

problems so that the prison has a chance to address the claims before they

reach federal court."  *Id.* (internal citation and quotation marks omitted).

Defendants concede that claims relating to some of them have been

exhausted properly.

### 2.  *Grievance 779-15A Exhausts Claims against Napier*

In Grievance 779-15A, filed in April 2016, Burns alleged that Napier

failed to follow policy and procedure by failing to notify Burns within 24

hours that his mail had been rejected.  [ECF No. 26-3, PageID.278-80].

Burns also alleged that he tried to resolve the dispute with King.  [*Id.*,

PageID.278].  Burns's narrative states that he expressed concern to King

about not receiving a grievance identifier and that King responded that it

was not his problem.  [*Id.,* PageID.280].  Burns also wrote that Wilton had

notified Burns's wife that Napier had taken the books from the property

room.  [*Id.*].  Burns requested that Napier be reprimanded and ordered to

follow MDOC guidelines, and a finding that being an incarcerated prisoner

does not violate prison policy.  [*Id.*].

Defendants state that this grievance exhausted claims against Napier

and Wilton, [ECF No. 26, PageID.220], but the Court finds that the

grievance did not give Wilton "fair notice" of any mistreatment on his part.

9

*Bell*, 450 F.3d at 654.  The grievance portrayed Wilton only as a messenger of information.  [ECF No. 26-3, PageID.278-80].  And though the grievance referred to King denying any responsibility for Burns's failure to receive a grievance number, it did not state that King's denial of responsibility for that issue was false.  [*Id.*].  The Court also notes that the relief Burns requested from this grievance related only to Napier.  [*Id.*, PageID.280].  Grievance 779-15A exhausted claims against only Napier.

### 3. *Grievance 858-15A Exhausts Claims against Napier*

In May 2016, Burns filed Grievance 858-15A, complaining that Napier removed his books from the property room, and that copies of his mail rejection notices were not sent to publisher Create Space as required by prison regulations.  [ECF No. 26-3, PageID.313].  Defendants admit that this grievance, too, exhausts Burns's claims against Napier.  [ECF No. 26. PageID.220].

### 4. *Grievance 879-07A Exhausts Claims Against King*

In Grievance 879-07A, also filed in May 2016, Burns appealed the results of his administrative hearing and the findings of hearing officer King that the books should be denied to Burns.  [ECF No. 26-3, PageID.298, 301].  Defendants admit that this exhausts Burns's claims against King. [ECF No. 26, PageID.220].

10

### *5. Grievances 886-28A and 887-28A were Duplicative*

Burns filed two more grievances, 886-28A and 887-28A.  [*Id.*, PageID. 253-61, 263-71].  MDOC found 886-28A to be duplicative of 879-07A, and 887-28A to be duplicative of both 886-28A and 879-07A.  [*Id.*, PageID.257, 267].  The Court agrees that Grievances 886-28A and 887-28A were duplicative.  MDOC officials may enforce its policy to reject duplicative grievances. PD 03.02.130, ¶G(1); *McCloy v. Correction Med. Servs.*, 794 F. Supp. 2d 743, 750 (E.D. Mich. 2011).

It is true that Grievances 886-28A and 887-28A are the first to name general office assistant Norder.  The grievances state that she filed the notices of mail rejection, [*Id.*, PageID.258, 270], but they did not give her fair notice of how that clerical act amounted to misconduct or mistreatment.  And even if Norder's act of filing notices of mail rejection could be construed as misconduct, the grievances would not exhaust Burns's claims against Norder in his complaint, which alleges that Norder signed for the delivered books at the front desk.  [ECF No. 1, PageID.4, 6].

Thus, the Court finds that Burns's exhausted his claims against only Napier and King.

11

## C.

Defendants also argue that Burns has failed to allege sufficiently the personal involvement of Brewer, Wilton or Floyd to impose liability under § 1983, and that *respondeat superior* is not a basis for liability under that statute.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  The Court agrees that Burns failed to state plausible claims against those defendants, and also finds that he stated no plausible claims against Artis and Rohrig.

### 1. The Claims Against Brewer Should be Dismissed.

Burns alleges in the complaint that Brewer, the prison warden, designated King as the hearing officer in the relevant matter and was generally "negligent in his duties to enforce policy and procedure denying plaintiff Burns due process in violation of the 1st, 5th, and 14th Amendments to the United States Constitution."  [ECF No. 1, PageID.5, 9].

Supervisory personnel may be held individually liable for failure to adequately supervise, control, or train employees.  *Rizzo v. Goode*, 423 U.S. 362, 385 (1976).  But to maintain such a claim, it is not enough that a supervisor simply had the "right to control employees."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Instead, a plaintiff must properly allege facts showing a "causal connection" between the alleged misconduct of

12

employees and actions of supervisors showing their endorsement of the unconstitutional conduct. *Rizzo*, 423 U.S. at 371. To establish such a causal connection, the official must have either "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). *See also Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) ("At a minimum, a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). A plaintiff must allege "more than negligence; a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct." *Adams v. Ballard,* No. CIV.A. 13-124-KKC, 2013 WL 5797905, at *3 (E.D. Ky. Oct. 28, 2013). So Burns's allegation that Brewer was negligent is insufficient.

In his response to defendants' motion, Burns argues that the complaint alleges Brewer's specific involvement in that "Napier informed Defendants M. Floyd and F. Artis that the books were delivered to the Warden's office for review." [ECF No. 35, PageID.438, citing ECF No. 1, PageID.6]. But the next sentence states that Napier's claim that the books were delivered to the warden's office was untrue. [ECF No. 1, PageID.6]. And the mere allegation that the books were delivered to Brewer's office

13

would not support a claim that he condoned, encouraged or participated in misconduct.

Burns also argues that Brewer's personal involvement is shown by the fact that Burns complained to Brewer and received responses.  But this allegation is only incorporated into his complaint through attached notices from "JPay Representative" that "the Warden's Office is in receipt of your kite."  [ECF No. 1-3, PageID.93, 95].  The notices evidence that someone from Brewer's office responded *pro forma* to Burns, not that Brewer personally viewed or responded to Burns's kites, or that he explicitly or implicitly endorsed Napier's decision to reject Burns's mailings.  The claims against Brewer should be dismissed.

### 2.  The Claims Against Wilton Should be Dismissed.

Burns alleges that Wilton "allowed administrative assistant Napier to take possession of plaintiff Burns's 'personal property.'"  [ECF No. 1, PageID.9].  Although Burns describes Wilton as a "property officer," defendants' motion to summary judgment describes him as a corrections officer.  [ECF No. 26, PageID.212].  Burns's complaint does not allege that Wilton was Napier's supervisor, or provide a factual basis for the suggestion that Wilton had the right to stop Napier for taking Burns's books.

14

In response to defendants' motion, Burns alleges that Wilton violated procedure by not reporting that Napier took his books.  [ECF No. 35, PageID.439].  Violations of MDOC procedure are not actionable under § 1983.  *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005) (noting that "the failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation."); *Graham v. Chicowski*, No. CV 16-12258, 2018 WL 4784666, at *8 (E.D. Mich. Apr. 5, 2018), *adopted,* 2018 WL 3659337 (E.D. Mich. Aug. 2, 2018) (holding that plaintiff's assertion that MDOC policies granted him constitutional rights was incorrect) (collecting cases).  For these reasons, Burns has not plausibly alleged that Wilson had personal involvement for a claim under § 1983.

### 3.  The Claims Against Floyd, Artis and Rohrig Should Be Dismissed.

Defendants Floyd, Artis and Rohrig are not referred to in the complaint until the claims for relief, where Burns alleged that they failed to enforce policy.  [ECF No. 1, PageID.11].  Burns notes that Floyd and Artis were recipients of Napier's allegedly untrue memorandum stating that the books in question were delivered to the Warden's office for review.  [ECF No. 35, PageID.438, *citing* ECF No. 1-2, PageID.24].  There is no other

15

apparent justification for including Floyd, Artis or Rohrig in this suit; Burns states no plausible claim against them.

Thus, the Court recommends dismissing *sua sponte* the claims against Brewer, Wilton, Floyd, Artis and Rohrig.

### D.

Burns asserted in his complaint that he suffered a denial of due process in violation of the First, Fifth and Fourteenth amendments, because of the ineffective handling of his grievances.  [ECF No. 1, PageID.7].  But defendants noted in their motion that "[t]here is no inherent constitutional right to an effective prison grievance procedure."  *Keenan v. Marker,* 23 F.App'x 405, 407 (6th Cir. 2001) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).  Thus, affirmative relief for an arbitrary grievance system is unavailable under § 1983.  *Walker v. Michigan Dep't of Corr.,* 128 F.App'x 441, 445 (6th Cir. 2005).

In response to defendants' argument about Burns's claim about the grievance procedure, Burns asserts that his right to access to the courts was diminished if his grievance was "addressed in a way that undermines the claim, and this Court is utilizing the grievance to reach decisions on dispositive motions."  [ECF No. 35, PageID.440].  Burns's attempt to add an access-to-the-courts claim in his response is improper.  He had to give

16

defendants fair notice of that claim in his complaint. *See In re Commonwealth Institutional Sec., Inc.*, 394 F.3d 401, 405 (6th Cir. 2005) ("Even under our liberal pleading standards, a plaintiff must at least give the defendant fair notice of what the claim is and the grounds upon which it rests, by providing either direct or inferential allegations respecting all the material elements to sustain a recovery.").

And even if Burns had pleaded his alleged access-to-the-courts claim in his complaint, it would lack merit. Access-to-the-courts jurisprudence prohibits prison officials from actively interfering with inmates' attempts to prepare or file legal documents, and requires state courts to waive filing and transcript fees for indigent inmates. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Such a claim is not abstract or freestanding; it is focused solely on "meaningful access to the courts." *Id.* (internal citation and quotation marks omitted). Burns does not allege that defendants' actions interfered with his ability to prepare or file legal documents, or to submit required fees. Nor does Burns allege actual injury, as required to sustain an access-to-the-courts claim. *Id.*[2]

---

[2] Defendants also correctly note that they are not subject to Fifth Amendment restrictions, which only apply to the federal government. *Public Utils. Comm'n of Dist. of Col. v. Pollack*, 343 U.S. 451, 461 (1952). And Burns's complaint that he was wrongfully denied his mail sounds under the

Burns's due process claim should be dismissed *sua sponte* for failure to state a claim.

## E.

Burns asserts a claim under the First Amendment.  "The Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, 'or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 832 (1974)).  A prisoner's right to receive mail from an outside source is included in this First Amendment right.  *Id.*

Defendants argue that their rejection of Burns's books was permitted under the Constitution because it was based on the legitimate penological interest of maintaining prison security.  The Court finds that defendants' motion for summary judgment on this issue should be denied, and that Burns has stated a plausible claim that Napier and King violated his First Amendment rights.

---

First Amendment, not the Fourteenth.  *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).

18

### 1. *Defendants' Burden*

Defendants' correctly note that "[a] prisoner's right to receive mail is subject to prison policies and regulations that are reasonably related to legitimate penological interests, such as security, good order, or discipline of the institution."  *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (internal citations and quotation marks omitted).  They argue that the validity of the policy regulating incoming publications must be examined under a four factor *Turner* test:

> (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Cornwell v. Dahlberg,* 963 F.2d 912, 917 (6th Cir. 1992) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987).  And defendants note that Burns "must overcome the presumption that the prison officials acted within their broad discretion."  *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (internal citation and quotation marks omitted).

But "[d]efendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such."  *Haywood v. Hough*, No. 1:17-CV-508,

19

2019 WL 3046850, at *9 (W.D. Mich. Apr. 25, 2019), *adopted*, 2019 WL 2314685 (W.D. Mich. May 31, 2019). This burden is slight and may be a matter of common sense. *Id.* Even so, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner,* 482 U.S. at 89–90. And the Sixth Circuit "has held unconstitutional the censorship of prisoner mail when prison officials censor simply by indulging their personal prejudices and opinions, while purporting to apply constitutional standards." *Jones,* 569 F.3d at 267 (internal citations and quotation marks omitted).

In seeking summary judgment, defendants also bear the initial burden of identifying portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp.,* 477 U.S. at 323.

Defendants fail to meet their initial burdens with their conclusory arguments.

### 2. Defendants' Arguments and Their Shortcomings

Defendants argue that Burns's books were a threat to good order of the facility because they were authored by a prisoner and that the *Turner* factors support summary judgment in their favor. [ECF No. 231-34]. They rely on a version of PD 05.03.118 that became effective in March 2018— after the relevant period—and King's findings from the administrative

20

hearing.  [ECF No. 26-8].  A portion of PD 05.03.118 states, "Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner."  [*Id.*, ¶ NN, PageID.355]. The policy then identifies 23 categories of mail that "pose such risks under all circumstances," none of which refer to books authored by current inmates.  [*Id.*, PageID.355-57].

Napier rejected Burns's books, and King upheld the rejection, because:

> [T]he prisoner author is currently incarcerated in a MDOC facility, influence/pressure could be exerted to have the book purchased and/or distributed by or for other prisoners as a means of compensation, communication or influence peddling. Allowing a current prisoner the ability to impact the atmosphere of the facility in this way is a threat to good order of the facility.

[ECF No. 1-1, PageID.35; see also ECF No. 1-3, PageID.77].

In support of this decision, defendants offer conclusory arguments like:

- "[M]aintaining security constitutes a legitimate penological interest";

- "[A] policy permitting prisoners to receive material that could facilitate or encourage criminal activity would have a significant impact on prison guards, and other inmates, and the allocation of prison resources" and "would negatively impact the security of the prison facility, its officers and other prisoners."

- "[A] policy permitting prisoners to receive materials that could facilitate or encourage criminal activity would have a significant impact on prison guards, other inmates, and the allocation of prison resources";

- An argument that the fourth *Turner* factor weighs in defendants' favor, relying on general statements of law supporting regulations that give prison authorities broad authority and stating that inconsistent results are not necessarily signs of arbitrariness or irrationality, and that the rejection of his books was not an exaggerated response to "the problem at hand."

[ECF No. 26, PageID.232-34].

These arguments are conclusory because defendants do not explain how Burns's books would encourage criminal activity or otherwise affect prison security.  Defendants argue that Burns could use the books to exert influence by allowing his books to be purchased or distributed to other prisoners, but they do not dispute that the books in question were a single set of proofs sent to Burns for him to make corrections.  How or why would Burns sell or distribute those proofs?  If Burns sold or distributed his proofs, instead of simply editing them, how would the sale or distribution of a single set of four book proofs meaningfully undermine prison security?  And Defendants do not explain why, if prisoner-authored books inherently threaten prison security, they are not specifically identified among the categories of prohibited mail in the general mail policy, PD 05.03.118, ¶ NN.  [ECF No. 26-8, PageID.355-57].

22

Burns makes note of a University of Michigan Prison Creative Arts Project.  [ECF No. 35-1, PageID.532].  A solicitation provided to prisoners explained how to submit "poetry, fiction, and essay manuscripts" by sending them to the university, and including a cover letter with identifying information, including the prisoner's current address.  [*Id.*].  Burns asserts that a "multitude" of prisoners have written books through this project without issue and that the project is encouraged by the MDOC.  [ECF No. 35, PageID.442].  Defendants cite generic language that inconsistencies in results do not necessarily invalidate a regulation, but they do not address Burns's argument that many other prisoners have written books without issue though the university project.  [ECF No. 35, PageID.100].  If the MDOC has in fact encouraged the project and allowed the university to mail prisoners' published writings to them, what is "the problem at hand" to which defendants refer when it comes to the proofs of Burns's books? [ECF No. 26, PageID.233].

Defendant made no attempt at an evidentiary showing, as required to sustain their initial burden under Rule 56(b).  They cite no policy that specifically addresses prisoner-authored publications or precedent stating that their ostensible ban on prisoner-authored publications is constitutional; as noted, PD 05.03.118 says nothing about prisoner-authored publications.

23

[ECF No. 26-8, ¶ NN, PageID.355-57].  Defendants instead rely on the unilateral decision of individual officials to reject Burns's books based on their opinion that the books posed security risks.  Given the questions raised above, Napier's and King's decision to reject Burns's book proofs is not easily understood under common sense.  A question of fact has been raised about whether his book proofs were arbitrarily and irrationally singled out for rejection.

*Figel v. Overton* supports a denial of summary judgment. 121 F. App'x 642, 646 (6th Cir. 2005).  In that opinion, the district court had correctly found PD 05.03.118 to be facially valid, but it erred in failing to recognize that the plaintiff was challenging the regulation as applied to the defendants' exclusion of an organization on the authorized religious vendor list.  *Id.* at 646.  "[T]he First Amendment issue in this case is not whether Directive 05.03.118 is reasonably related to a legitimate penological interest, as the district court perceived it to be. Rather, it is whether Defendants' refusal to authorize PCG as a vendor is reasonably related to a legitimate penological interest."  *Id.*  The court noted that there was nothing in the record to suggest that the organization was not a legitimate church or religious organization.  *Id.*; *see also Alame v. Smetka*, No. 08-10777, 2009 WL 236073, at *8 (E.D. Mich. Jan. 29, 2009) ("Given the

24

present dearth of information, the ultimate question remains as to whether the P.D. is arbitrarily applied pursuant to *Turner*, or constitutes a denial of Plaintiff's constitutional rights.").

Here, there is no evidence in the record to show that Napier's alleged rejections of Burns's books, and King's decision to uphold that decision, are reasonably related to a legitimate penological interest.  Given the dearth of evidence, the ultimate question of whether Napier and King arbitrarily rejected Burns's books, in violation of the First Amendment, remains.

**F.**

The last question is whether Napier and King have a right to qualified immunity, as they argue.  Qualified immunity applies when a reasonable juror, viewing the evidence in a light most favorable to the plaintiff, would find that the defendant did not violate a clearly established constitutional right.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). In the Sixth Circuit, a constitutional violation is established by binding precedent from the Supreme Court or this circuit, and a court should look beyond those precedents only in extraordinary cases.  *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993), *superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).

25

The Supreme Court has warned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, __ U.S.__, 138 S.Ct. 1148, 1152 (2018) (citation and internal quotation marks omitted). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A case need not be directly on point to be clearly established, but existing precedent must place officials on notice that the conduct at issue is unlawful. *Kisela,* 138 S.Ct. at 1152-53.

That inmates retain their First Amendment right to receive mail that is not inconsistent with legitimate penological interests has long been clearly established. *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009); *Thornburgh v. Abbott,* 490 U.S. 401, 407–09 (1989). It is clearly established that the regulation of mail "cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner,* 482 U.S. at 89–90. And it is clearly established that it is unconstitutional "when prison officials censor [mail] simply by indulging their personal prejudices and

26

opinions, while purporting to apply constitutional standards." *Jones,* 569 F.3d at 267 (internal citations and quotation marks omitted).

If Napier and King arbitrarily and irrationally withheld Burns's book proofs, and did so based on only their personal prejudices and opinions, the existing precedent would place them on notice that their conduct was unlawful. *Kisela,* 138 S.Ct. at 1152-53. For the reasons stated, genuine disputes of material fact remain, and summary judgment of Napier and King's qualified immunity defense should be denied.

## III. CONCLUSION

Defendants' motion for summary judgment [ECF No. 26] should be **GRANTED IN PART AND DENIED IN PART**, and the claims against all defendants except Napier and King should be dismissed *sua sponte*.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: August 15, 2019

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

27

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

28

## __CERTIFICATE OF SERVICE__

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager