UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BURNS,

    Plaintiff,

v

SHAWN BREWER, *et al.*

    Defendants.
_____/

Civil Action No.: 18-10937
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 68]**

Plaintiff William Burns, a prisoner acting *pro se*, sues Michigan Department of Corrections (MDOC) employees under 42 U.S.C. § 1983 because he was prohibited from receiving incoming mail containing proofs of books that allegedly posed a security threat. [ECF No. 1]. All defendants other than James King and Kimberly Napier were previously dismissed. [ECF No. 45; ECF No. 50]. After discovery and with leave from this Court, King, and Napier (collectively, "defendants") again move for summary judgment. [ECF No. 68]. Burns responded and defendants replied. [ECF No. 77; ECF No. 72]. The Court **RECOMMENDS** that defendants' motion be **GRANTED,** and that the remaining claim against defendants be dismissed.

I. **BACKGROUND**

In April 2016, while Burns was housed at the G. Robert Cotton Correctional Facility (JCF), Create Space publisher mailed him proofs of four books that he authored—"Some Kind of Crook," "The Wee Hours," "Peaches, The Wee Hours" and "Florida Snow." [ECF No. 1, PageID.3-7; ECF No. 1-1, PageID.24; ECF No. 1-2, PageID.68; ECF No. 1-3, PageID.100]. Burns alleges that, after the books arrived at JCF, he received a Notice of Package/Mail Rejection stating that the books violated MDOC Policy Directive (PD) 05.03.118, paragraph MM. [ECF No. 1, PageID.4; ECF No. 1-3, PageID.85; ECF No. 68-4, PageID.782].

Burns filed grievances over the rejection of this mail, but King, the hearing officer, held that the rejection of the books was proper under PD 05.03.118. [ECF No. 1-1; ECF No. 1-2; ECF No. 1-3, PageID.77]. King found that Burns could use influence or pressure to have other prisoners purchase or distribute the books "as a means of compensation, communication or influence peddling." [ECF No. 1-1, PageID.35]. King also relied on Burns's admission that he intended to sell his books through online retailers after he proofed and edited them. [*Id.*]. King explained that PD 05.03.118 also prohibited mail intended for operating a business enterprise. [*Id.*].

2

In their motion for summary judgment, defendants cite both rationale that King relied on for rejecting the books. [ECF No. 68, PageID.715-725]. They also renew their argument for summary judgment in their favor under qualified immunity and immunity under the Eleventh Amendment. [*Id.*, PageID.727-730].

## II. ANALYSIS

### A.

Rule 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

**B.**

"[P]rison inmates retain all First Amendment rights not incompatible with their status as prisoners, or with the legitimate penological objectives of the corrections system." *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 832 (1974)) (internal quotation marks omitted). A prisoner maintains the right to receive mail from outside correspondents, subject to valid regulations "reasonably related to legitimate penological interests." *Id.* at 270 (quoting *Turner v. Safley*, 482 U.S. 78, 85 (1987)); *see also Thornburgh v. Abbott*, 490 U.S. 401, 407-409 (1989). Courts apply four factors when addressing whether a restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally; and (4) the existence or absence of ready alternatives to the regulation. *Turner*, 482 U.S. at 88-91.

Under MDOC policy, a prisoner may not receive "mail for the purpose of operating a business enterprise while within the facility." PD 05.03.118,

4

¶ MM (22) (effective 9/14/2009) [ECF No. 68-4].  The exclusion of those materials stems from the MDOC's conclusion that the items "may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner."  *Id.,* ¶ MM.  Many courts in this circuit applying the *Turner* factors to the "business enterprise" rule have found a valid rational connection between the regulation and a legitimate penological interest.  *Jones v. Huss*, 2019 WL 2754491, at *5 (W.D. Mich. July 2, 2019) (collecting cases).

In his response brief, Burns does not argue that the business enterprise rule, as applied to his book proofs, was not reasonably related to a legitimate penological interest.  [ECF No. 77].  This omission is critical because Burn has a "heavy burden" to "overcome the presumption that prison officials acted in within their broad discretion."  *Thompson v. Campbell*, 81 F. App'x 563, 568 (6th Cir. 2003) (quoting *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (quotation marks omitted).  Burns made no effort to meet this burden.

Nor does Burns refute the remunerative purpose of the book proofs.  In fact, he requests damages for loss of income in complaint, thus confirming his intent to profit from his books.  [ECF No. 1, PageID.12-13].  And he conceded that he intended to offer his manuscripts for sale in the

5

written statements he prepared to support his grievances.  [ECF No. 1-2, PageID.62-63].

In contesting defendants' earlier motion for summary judgment [ECF No. 26], Burns argued that the MDOC's promotion of the University of Michigan Prison Creative Arts Project (PCAP) showed that there was no rational connection between the rejection of his books and any legitimate penological purpose.  [ECF No. No. 35, PageID.442; ECF No. 35-1, PageID.532].  Burns does not raise this argument in opposition to the motion for summary judgment now before the Court.  [ECF No. 77].  Even if he had made that argument, it would miss the mark.

Under the "business enterprise" mail rule, defendants rejected Burns's books not because he authored them,[1] but because he sought to profit from them.  MDOC PD 05.03.118 ¶ MM (22).  In contrast, the PCAP allowed prisoners to submit their writings for publication in an annual anthology, but not for payment.  [ECF No. 35-1, PageID.532].  Since the

---

[1] Defendants' alternative basis for rejecting Burns's packages—that Burns could use the books to exert influence by selling them or distributing them to other prisoners—does relate to the fact that they were manuscripts he authored.  In denying in part defendants' earlier motion for summary judgment, the Court found this alternative rationale to be conclusory; defendants neither explained how Burns could use his books to exert influence over other prisoners nor provided evidence to support this argument.  [ECF No. 50, PageID.592-595].  Those shortcomings remain in defendants' renewed motion for summary judgment.  [ECF No. 68].

prisoners who submit their writing to the PCAP program are not paid, the business enterprise rule does not apply.

Burns's only argument in opposition to the current motion for summary judgment is that it is barred by collateral estoppel and res judicata because the Court denied in part defendants' earlier motions for summary judgment. [ECF No. 77]. This argument lacks merit. "[P]arties are not limited to one summary judgment motion because '[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought.'" *Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir.2000)). "'The denial of summary judgment has no res judicata effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist.'" *Id.* (quoting *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir.1995)).

In sum, Burns does not deny that he his book proofs were mailed to him for the purpose of operating a business enterprise within the meaning of PD 05.03.118 ¶ MM (22). That regulation satisfies the *Turner* factors, so

7

summary judgment for defendants on Burns's First Amendment claim should be granted. *See Huss*, 2019 WL 2754491, at *5. But the Court need not decide that issue to recommend summary judgment in defendants' favor because they are entitled to qualified immunity.

## C.

Even if Burns had fashioned a persuasive argument that defendants violated his constitutional rights when applying the business enterprise mail rule to his books, that violation would not have been clearly established. Thus, defendants are entitled to summary judgment based on qualified immunity.

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity applies when "a reasonable official could have thought that relying on [a] facially valid regulation . . . did not violate the prisoners' constitutional rights." *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992). Indeed, qualified immunity protects "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well-established constitutional right." *Id.* at

719-720.  Even if a regulation is later found to be unconstitutional, prison officials who reasonably relied on and applied a valid regulation are not stripped of the protections of qualified immunity.  *Id.* at 720.

Here, defendants relied on the business enterprise mail rule to reject Burns's book proofs.  As noted, several cases from this circuit have found the business enterprise mail rule constitutionally valid.  *See, e.g.*, *Jones*, 569 F.3d at 273; *Huss*, 2019 WL 2754491, at *5.  Even if this Court found that applying the business enterprise rule to Burns's books was unconstitutional, that interpretation of the rule would not be so clearly established that "any officer in the defendant[s'] position, measured objectively, would have clearly understood that" rejecting the books was unconstitutional.  *Miller v. Stewart,* 2019 WL 2208466, at *12 (E.D. Mich. March 1, 2019) (internal quotation marks omitted).  Summary judgment on defendants' qualified immunity defense should be granted.

### D.

Defendants also argue that they are entitled to summary judgment under the Eleventh Amendment.  [ECF No. 68, PageID. 727-728].  A suit for damages against a state official in his or her official capacity cannot be maintained under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  "However, the eleventh amendment is not a bar to injunctive

relief against the defendants in their official capacities." *Wolfel*, 972 F.2d at 719.

The only surviving claim for injunctive relief—the removal of Burns's books from the restricted list—is alleged against Napier only. [ECF No. 1, PageID.12]. But, as sworn in her affidavit, Napier is an administrative assistant and "is not involved in any decisions pertaining to . . . what is placed on the restricted publications list." [ECF No. 68-2, PageID.736, ¶5]. Because Burns does not refute this assertion, no genuine issue of material fact exists and Napier is entitled to summary judgment on Burns's claim for injunctive relief.

### III. CONCLUSION

Defendants' motion for summary judgment [ECF No. 68] should be **GRANTED**, and the claims against the remaining defendants except should be dismissed.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: January 25, 2021

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

10

72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).

   Each objection must be labeled as "Objection #1," "Objection #2," etc., and must specify precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, any non-objecting party must file a response to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be concise and proportionate in length and complexity to the objections, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 25, 2021.

                                               s/Marlena Williams
                                               MARLENA WILLIAMS
                                               Case Manager